IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| SHAMBAUGH & SON, L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| XL INSURANCE AMERICA, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

COMES NOW plaintiff Shambaugh & Son, L.P. ("Shambaugh"), by and through counsel, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §1332, §2201 and §2202, and for its Complaint for Declaratory Judgment and Damages, states, avers, and alleges as follows:

### Nature of the Action

1. This action for declaratory judgment and damages arises from a lawsuit filed in the District Court of Finney County, Kansas, captioned *Allianz Global Risks U.S. Insurance Company, et al., as subrogees of Dairy Farmers of America, Inc. v. Tetra Pak, Inc., Shambaugh & Son L.P, Keller Fire & Safety, Inc., and MSKTD & Associates, Inc.*, Case No. 2020-CV-000093 (hereinafter the "Underlying Action").

2. The Underlying Action arises out of a September 12, 2018 fire in a Dairy Farmers of America, Inc. (hereinafter, "DFA") milk processing facility in Garden City, Kansas (the "Property").

3. In the Underlying Action, the insurer-plaintiffs, as subrogees of DFA, have brought claims against Shambaugh and other parties, alleging their conduct caused or contributed to the fire at the Property, seeking damages in excess of $6 million.

4. XL Insurance America, Inc. ("XLIA") issued to Tetra Pak, Inc. a Commercial General Liability insurance policy, No. US00064710LI18A, for the period of January 1, 2018 to January 1, 2019, providing a $5,000,000 Each Occurrence Limit; $10,000,000 General Aggregate Limit; and $10,000,000 Products-Completed Operations Aggregate Limit (hereinafter the "XLIA Policy").

5. Shambaugh, as general contractor in constructing the Property, entered into a subcontract agreement with Tetra Pak, Inc.—XLIA's named insured—wherein Tetra Pak, Inc. agreed to supply and install certain Equipment described therein, including the Milk Drying Unit alleged to have been the origin of the fire at the Property, as well as provide certain testing, performance, and related services in connection with the delivery, installation and construction of Tetra Pak's equipment as set forth in the parties' agreement.

6. In the Shambaugh-Tetra Pak agreement, Section 14.2, Tetra Pak agreed to indemnify and hold Shambaugh harmless from any third-party claim, demand, suit, action, or proceeding, liability, damages, costs (including, without limitation, reasonable attorneys' fees), and/or loss of any kind whatsoever arising or resulting from or relating to the negligence or willful misconduct of or the performance of the work by Tetra Pak.

7. Furthermore, pursuant to Section 15.3 of the agreement, Tetra Pak was required to maintain adequate liability insurance, including physical damage to property coverage, and to name Shambaugh as an additional insured in such liability insurance policy—i.e., the XLIA Policy.

8. Shambaugh tendered to XLIA, through Tetra Pak and then directly, the defense and indemnity of Shambaugh in the Underlying Action because Shambaugh is an Additional Insured in the XLIA Policy issued to Tetra Pak.

2

9. Shambaugh tendered defense and indemnity to XLIA directly on October 6, 2020; December 9, 2021; and January 31, 2022. To date, XLIA has not acknowledged the claim or accepted the tender of defense and indemnity issued by Shambaugh.

10. In this action, Shambaugh seeks a declaration that (1) XLIA has a duty to defend Shambaugh in the Underlying Action per the XLIA Policy; (2) XLIA has a duty to indemnify Shambaugh with respect to the Underlying Action; and (3) XLIA is obligated to reimburse Shambaugh for all defense costs incurred in its defense of the Underlying Action and in its tender of defense and indemnity to XLIA which has been ignored or constructively denied by XLIA, plus interest.

**Parties**

11. Plaintiff is a company organized and existing under the laws of Indiana, with its principal place of business in Indiana.

12. Defendant XLIA is a property and casualty insurance company organized under the laws of Delaware, with its principal place of business in Connecticut, which is licensed and authorized to do business in Kansas. As such, XLIA may be served via the Kansas Insurance Department.

**Jurisdiction and Venue**

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, §2201 and §2202 because:

    a. There is an actual controversy between the parties, in that there is a bona fide coverage dispute under the XLIA Policy as set forth herein;

b. The amount in controversy exceeds $75,000, exclusive of interest and costs, given the damages alleged below in excess of $6 million and the coverage sought herein for both defense, indemnity, and other items which exceed $75,000; and;

c. The matter is between citizens of different states, in that Plaintiff Shambaugh is an Indiana company and Defendant XLIA is a Delaware corporation with its principal place of business in Connecticut.

14. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claim occurred in Finney County, Kansas, within this district, and the underlying lawsuit for which coverage is sought is pending in Finney County, Kansas, within this district.

15. Shambaugh believes the Wichita Division of this Court is the appropriate place of trial.

## The Underlying Action

16. The Underlying Action arises from a fire at a DFA milk processing facility in Garden City, Kansas (the "Property") which occurred on or about September 12, 2018 and is alleged to have been caused by a defective milk drying unit at the Property which was supplied by Tetra Pak, XLIA's insured.

17. The Petition filed in the Underlying Action is attached hereto as **Exhibit A** and is incorporated as if fully set forth herein.

18. Prior to the loss, DFA and Shambaugh had entered into an agreement pursuant to which Shambaugh agreed to perform construction services at the Property as the general contractor.

19. Part of the project included the purchase by DFA of a milk drying unit which was manufactured and installed by Tetra Pak.

4

20. On the loss date, it is alleged a buildup of dry milk product reached a combustible temperature and descended into the product collection area of the milk drying unit, causing an ignition of accumulated product.

21. Despite being equipped with a fire suppression system, the milk drying unit was allegedly unable to contain the fire, resulting in its spread to surrounding areas within the Property.

22. DFA alleges fire damage in excess of $6,219,960.76, which was paid by the insurer-plaintiffs in the Underlying Action and sought to be recovered from Shambaugh and other project participants by those insurers as subrogees of DFA.

23. The underlying plaintiffs brought claims as follows:

   a. Claim for Negligence (Product Liability) against Tetra Pak, alleging, *inter alia*, that Tetra Pak's work in designing, assembling, manufacturing, selling, supplying, distributing, and/or building the milk drying unit supplied to the Property was negligent, defective, not reasonably fit or suitable for its intended purpose, lacked necessary safety features, and other allegations of negligence, negligent failure to warn, and the like.

   b. Claim for Strict Product Liability against Tetra Pak, based on its conduct with regard to supplying the milk drying unit at the Property.

   c. Claim for Breach of Implied Warranty of Merchantability against Tetra Pak, based on its conduct with regard to supplying the milk drying unit at the Property.

   d. Claims for Negligence and Breach of Contract against Shambaugh in connection with the damage caused by the milk drying unit supplied by Tetra Pak.

    e. Claims for Negligence, Breach of Implied and/or Express Contract, and Strict Product Liability against Keller, which supplied a fire suppression system to the Property.

    f. Claims for Negligence and Breach of Implied and/or Express Contract against MSKTD, which provided certain design and construction services related to the Property.

### The Shambaugh/Tetra Pak Agreement

24. Shambaugh entered into a subcontract agreement with Tetra Pak in which Tetra Pak agreed to design, assemble, supply, build, deliver, and/or distribute, then install, the milk drying unit at the Property (the "Agreement")

25. Tetra Pak was also required to provide certain testing and performance procedures and other related services in connection with the delivery, installation and construction of Tetra Pak's Equipment as outlined in the Agreement, including the milk drying unit at issue.

26. Section 14.2 of the Agreement, "**Indemnification**," provides:

14.2 – Other than as specified in this Contract, Tetra Pak shall indemnify and hold Customer [Shambaugh] or Owner, as the case may be, harmless from any third party claim, demand, suit, action, or proceeding, liability, damages, costs (including, without limitation, reasonable attorneys' fees), and/or loss of any kind whatsoever arising or resulting from or relating to the negligence or willful misconduct of or the performance of the work by Tetra Pak, except to the extent caused by the negligence or willful misconduct of Customer or Owner.

27. Section 15.3 of the Agreement, "**Transfer of risk and Insurance**," provides:

Both parties shall keep and maintain adequate liability insurance, including physical damage to property and personal injury, covering their respective obligations under the Contract. Tetra Pak shall maintain the insurance contained in the Insurance Certificate attached as Exhibit 13 throughout the projects. Tetra Pak shall require its subcontractors to maintain similar levels of insurance consistent with the scope of their work on the project. Customer [Shambaugh] and Owner shall be additional insureds under Tetra Pak's insurance.

28. The insurance certificate referenced in Section 15.3 of the Shambaugh/Tetra Pak agreement identifies the XLIA Policy.

29. Accordingly, per the parties' Agreement, Tetra Pak is required to indemnify and hold harmless Shambaugh in the Underlying Action, in that the claims asserted by the underlying plaintiffs against Shambaugh fall within the scope of "any third-party claim, demand, suit, action, or proceeding, liability, damages, costs (including, without limitation, reasonable attorneys' fees), and/or loss of any kind whatsoever arising or resulting from or relating to the negligence or willful misconduct of or the performance of the work by Tetra Pak."

30. Tetra Pak was also required to add Shambaugh as an additional insured in its liability insurance policies, including the XLIA Policy, and in fact Shambaugh does qualify as an additional insured in the XLIA Policy.

## The XLIA Insurance Policy

31. XLIA issued to Tetra Pak, Inc. a Commercial General Liability insurance policy, no. US00064710LI18A, for the period of January 1, 2018 to January 1, 2019, providing a $5,000,000 Each Occurrence Limit; $10,000,000 General Aggregate Limit; and $10,000,000 Products-Completed Operations Aggregate Limit. A copy of the XLIA Policy is attached hereto as **Exhibit B** and incorporated as if fully set forth herein.

32. The XLIA Policy includes an Endorsement titled **ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION - CG 20 26 04 13**, which provides, in pertinent part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name Of Additional Insured Person(s) Or Organization(s)**

Any person or organization that you are required in a written contract or written agreement to include as an additional insured provided the "Bodily Injury" or "Property Damage" occurs subsequent to the execution of the written contact or written agreement.

[. . . .]

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:
1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less. This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

33. The XLIA Policy includes an Endorsement titled **ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS - CG 20 37 04 13**, which provides, in pertinent part, as follows:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

**Name Of Additional Insured Person(s) Or Organization(s)**

Any person or organization that you are required in a written contract or written agreement to include as an additional insured provided the "Bodily Injury" or "Property Damage" occurs subsequent to the execution of the written contract or written agreement.

**Location And Description Of Completed Operations**

As required per written contract Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:
1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less. This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

34. Shambaugh qualifies as an Additional Insured under these endorsements and is entitled to defense and indemnity as set forth in the XLIA Policy and the Agreement.

## Claims Correspondence

35. By way of letter dated December 21, 2018, Shambaugh (through counsel) tendered the defense and indemnity of the claim (pre-suit) to Tetra Pak, which was denied.

36. By way of letter dated October 16, 2020, Shambaugh (through counsel) again tendered the defense and indemnity of the claim (then in suit) to Tetra Pak and its counsel, which was denied by Tetra Pak on November 16, 2020, but Tetra Pak's counsel indicated it had forwarded the tender to Tetra Pak's insurance carriers, including XLIA.

37. By way of letter dated December 9, 2021, Shambaugh (through counsel) again tendered the defense and indemnity of the Underlying Lawsuit, this time directly to XLIA, requesting a response within 10 days. No response or acknowledgment was received.

38. By way of letter dated January 31, 2022, Shambaugh (through counsel) again tendered the defense and indemnity of the Underlying Lawsuit to XLIA, requesting a response by February 11, 2022. No response or acknowledgment was received.

## COUNT I – DECLARATORY JUDGMENT

39. Shambaugh incorporates the preceding paragraphs as if fully set forth herein.

40. A controversy has arisen between Shambaugh and XLIA as to their respective rights and duties under the XLIA Policy.

41. XLIA has a duty to defend and, if necessary, indemnify Shambaugh for the claims and allegations set forth in the Underlying Action as required by the terms and provisions of the XLIA Policy, the Shambaugh/Tetra Pak Agreement, and applicable law.

42. Shambaugh has provided XLIA with adequate information to complete its coverage investigation, but XLIA has not responded to its tender of defense and indemnity.

43. XLIA has to date failed to acknowledge its duty to defend Shambaugh and has constructively denied the claim by failing to acknowledge or respond to the claim.

44. An actual case or controversy exists between Shambaugh and XLIA concerning Shambaugh's entitlement to a defense in the Underlying Action under the XLIA Policy and applicable law.

45. A resolution of this dispute is necessary to resolve XLIA's duty to defend Shambaugh in the Underlying Action and to reimburse Shambaugh for fees and expenses which have been expended on its defense and in pursuing the tender of defense and indemnity which has been ignored or constructively denied by XLIA.

WHEREFORE, Plaintiff Shambaugh prays for the following relief:

(a) A declaration of the Court that XLIA has a duty to defend Shambaugh in the Underlying Action per the XLIA Policy;

(b) A declaration of the Court that, if necessary, XLIA has a duty to indemnify Shambaugh with respect to the Underlying Action;

(c) A declaration of the Court that XLIA is obligated to reimburse Shambaugh for all defense costs incurred in its defense of the Underlying Action, and in its tender of defense and indemnity to XLIA which has been ignored or constructively denied by XLIA, plus interest; and

(d) For all other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT / BAD FAITH

32. Shambaugh incorporates the preceding paragraphs as if fully set forth herein.

33. XLIA is contractually obligated under the XLIA Policy to defend and, if necessary, fully indemnify Shambaugh in connection with the Underlying Action.

34. Shambaugh has incurred and paid sums, including defense costs, in the Underlying Action that fall within the coverage and limits afforded in the XLIA Policy.

35. XLIA has refused to accept its contractual obligation to defend and, if necessary, indemnify Shambaugh under the XLIA Policy.

36. In doing so, XLIA has materially breached its duties and obligations to Shambaugh under the Policies.

37. As a direct and proximate result of XLIA's misconduct, it has deprived Shambaugh of the benefit of contractual insurance coverage it is owed under the XLIA Policy and applicable law, and has thus damaged Shambaugh in an amount to conform to proof at trial, including consequential, special, and incidental damages.

38. K.S.A. 40-256 provides, in pertinent part:

[I]n all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appears from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action.

39. Here, XLIA's failure to "pay the full amount" of Shambaugh's loss is "without just cause or excuse," entitling Shambaugh to attorneys' fees in this coverage action, inasmuch as XLIA has simply ignored the claim and provided no basis whatsoever for its actions.

40. K.S.A. 40-908 provides, in pertinent part:

**Attorney fees in certain actions.** That in all actions now pending, or hereafter commenced

in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs: Provided, however, That when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed.

41.     Shambaugh is entitled to a reasonable sum as attorney's fee as part of the costs in this matter, inasmuch as the XLIA Policy insures property against loss by fire.

WHEREFORE, Shambaugh prays for judgment in its favor, and for an award of all damages allowable by law, plus interest, costs, and attorney's fees, and for such additional or further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

**FRANKE SCHULTZ & MULLEN, P.C.**

*/s/ Christopher M. Harper*
CHRISTOPHER M. HARPER     KS #23273
8900 Ward Parkway
Kansas City, Missouri  64114
Phone:   (816) 421-7100
Fax:       (816) 421-7915
*charper@fsmlawfirm.com*
**Attorneys for Shambaugh & Son, L.P.**